UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

GLENDA K. RAGGINS,

    Plaintiff,

vs.      CASE NO. 3:11-cv-1237-J-TEM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.[1]

## ORDER AND OPINION

This case is before the Court on Plaintiff's complaint (Doc. #1). Plaintiff seeks review of the final decision of the Commissioner of Social Security that denied Plaintiff's claims for disability insurance benefits (DIB) and supplemental security income (SSI) disability payments. This Court has authority to conduct the requested review. 42 U.S.C. § 405(g).

Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #19, Plaintiff's Brief). Defendant filed her brief in support of the decision to deny disability benefits (Doc. #20, Defendant's Brief). The Commissioner has filed the transcript of the underlying administrative proceedings and evidentiary record (hereinafter referred to as "Tr." followed by the appropriate page number). Both parties consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by the Reference Order dated March 16, 2012 (Doc. #14).

Upon review of the record, the Court found the issues raised by Plaintiff were fully

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

briefed and concluded oral argument would not benefit the Court in making its determinations. Accordingly, the matter has been decided on the written record. For the reasons set out herein, the decision is **AFFIRMED**.

### I. Procedural History

Plaintiff, Glenda K. Raggins, filed for DIB and SSI on December 17, 2008, alleging disability as of December 1, 2006 (Tr. 127, 132). Plaintiff alleged an inability to work due to bipolar disorder, depression, severe anxiety attacks, hepatitis C and high blood pressure (Tr. 158). Plaintiff's claims were denied initially and on reconsideration. She timely requested a hearing, which was ultimately held on November 23, 2010, via video between Jacksonville, Florida and Savannah, Georgia (Tr. 30-48). Administrative Law Judge (ALJ) John Maclean presided over the hearing. Plaintiff appeared and testified at the hearing, as did vocational expert (VE) Don Harrison. Plaintiff was represented throughout the hearing by attorney Lori Gaglione. On December 21, 2010, the ALJ issued an unfavorable decision (Tr. 16-24). Plaintiff requested review of the decision by the Appeals Council (AC); however, the AC denied her request, making the hearing decision the final decision of the Commissioner (Tr. 1-3). Plaintiff's counsel filed the instant complaint in federal court on December 16, 2011 (Doc. #1). Additional legal counsel, Mr. Erik Berger, entered an appearance on behalf of Plaintiff and filed Plaintiff's Brief in support of Plaintiff's appeal of the Commissioner's decision to deny disability benefits.

### II. Social Security Act Eligibility, the ALJ Decision and the Standard of Review

A plaintiff may be entitled to disability benefits when he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 20 C.F.R. § 404.1505.[2] The Commissioner has established a five-step sequential evaluation process for determining whether Plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 404.1520; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Plaintiff bears the burden of persuasion through Step 4, while at Step 5, the burden temporarily shifts to the Commissioner to establish the existence of other jobs in the economy that the plaintiff can perform. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

The ALJ's decision dated December 21, 2010 denied Plaintiff's claim (Tr. 16-24). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date (Tr. 18). ALJ Maclean found Plaintiff's date last insured for DIB to be September 30, 2007 (Tr. 13). At step two, the ALJ found Plaintiff had the severe impairments of degenerative disk disease of the lumbar spine, hypertension and bipolar disorder (Tr. 18). At step three, the ALJ found these impairments did not meet or equal, either singly or in combination with any other impairment, any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr.18). The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work, except she should avoid jobs requiring constant public interaction, but can have occasional contact with coworkers and supervisors (Tr. 19). At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work (Tr. 23).

---

[2]All references to 20 C.F.R. shall be to the 2012 edition, unless otherwise noted. As the Regulations for SSI disability payments mirror those set forth for DIB on the matters presented in this case, from this point forward the Court may refer only to those sections

At step five, taking into consideration Plaintiff's age, education, work experience, and RFC, the ALJ concluded there are jobs that exist in significant numbers in the national economy that Plaintiff could perform despite her impairments. *Id.* Accordingly, the ALJ determined Plaintiff was not disabled within the meaning of the Social Security Act (Tr. 23-24).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988). The Commissioner's findings of facts are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance-- in other words, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992).

As in all Social Security disability cases, the plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence

regarding his or her impairments. *Yukert*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove the existence of disabling physical or mental functional limitations. 20 C.F.R. §§ 404.704, 404.1512(a).

The Commissioner must apply the correct law and demonstrate that she has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the Court has not re-weighed the evidence, but has determined whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the Plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

### III. Analysis

Plaintiff, who was born on October 5, 1962, is now a fifty year old female (Tr. 154). Plaintiff has a GED and some college, and is able to read, write and understand English (Tr. 39, 158). Plaintiff describes her past relevant work as a clerk in a food store (Tr. 159). Plaintiff claims she is disabled due to her bipolar disorder, depression, severe anxiety attacks, hepatitis C and high blood pressure (Tr. 158). Plaintiff asserts she cannot function on a day-to-day basis because of the pain she feels in her lower back and throughout her

body (Tr. 159).

Plaintiff raises two issues on appeal. First, Plaintiff asserts the ALJ erred when he failed to account for his finding that Plaintiff had moderate difficulties in sustaining concentration, persistence or pace in his ultimate RFC determination and the hypothetical question to the VE. Plaintiff's Brief at 1. Second, Plaintiff asserts that the ALJ erred in his failure to discuss why he disregarded the medical opinion evidence from two of the Commissioner's experts regarding the severity of Plaintiff's mental impairments. *Id.*

In general, the Commissioner responds that the ALJ's decision was based on substantial evidence and should be affirmed. *See generally,* Defendant's Brief. In particular, the Commissioner asserts that the ALJ assessed Plaintiff's RFC based on the record in its entirety and articulated sufficient rationale for his ultimate RFC finding. *Id.* at 9-10. The Commissioner further posits that the hypothetical question offered by the ALJ to the VE comprehensively included all of Plaintiff's credible limitations. *Id.* at 11. Additionally, the Commissioner asserts that the ALJ properly reviewed and considered the opinion evidence in this case, and appropriately balanced each medical opinion against the record as a whole. Defendant's Brief at 7.

**<u>Consideration of the Medical Opinion Evidence</u>**

Plaintiff argues that the ALJ erred when he failed to discuss why he disregarded the medical opinions of two non-examining state consultants regarding the severity of Plaintiff's mental impairments. Plaintiff's Brief at 1, 7-9, 14-17. Plaintiff is mistaken. Contrary to Plaintiff's position, ALJ Maclean did not disregard or ignore the opinions from these State

Agency psychologists.[3]  Although Plaintiff correctly states the standard of review an ALJ applies when considering the medical opinions of state agency experts, Plaintiff has misconstrued ALJ Maclean's review and consideration of the opinions offered by Dr. Gary Buffone, Psy.D., and Dr. Leigh Rosenberg, Psy.D., both of whom reviewed Plaintiff's medical records in 2009 (*see* Tr. 332-348, 366-383).  In fact, the ALJ explicitly referred to the reports of these reviewers in his decision as support for the additional work limitation regarding Plaintiff's restriction from interaction with the public and limited interaction with others in the workplace (*see* Tr. 22).

As medical experts reviewing Plaintiff's record, the opinions of Drs. Buffone and Rosenberg are entitled to consideration and some weight, but not deferential weight that may be afforded an acceptable treating source whose opinion is supported by objective medical evidence.  *See* 20 C.F.R. § 404.1527(d)(2) (stating that a treating physician's opinion on the nature and severity of a claimant's impairments is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record).  Plaintiff correctly states the Social Security Regulations require that an ALJ consider the opinions of non-examining sources who review the records and offer expert opinions.  Plaintiff's Brief at 7-9; 20 C.F.R. § 404.1527(e).  The weight that should be assigned to a non-examining source opinion "depends, among other things, on the extent to which it is supported by clinical findings and is consistent with other evidence."  *Jarrett v. Comm'r of Soc. Sec.*, 422 Fed. Appx. 869, 873 (11th Cir. 2011); *see also Oldham v. Schweiker*, 660 F.2d 1078, 1084

---

[3]Plaintiff erroneously refers to Drs. Buffone and Rosenberg as State Agency physicians in her argument.  Plaintiff's Brief at 14-17.

(Former 5th Cir., Unit B Nov. 1981) ("The law is clear that, although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."). Here, the ALJ accepted and adopted Drs. Buffone and Rosenberg's opinions that Plaintiff was moderately limited in the domains of social functioning and concentration, persistence or pace (*compare* Tr. 19 *with* Tr. 346, 376). Delving deeper into the more detailed narrative opinions of these reviewers, and relying heavily on the report from Dr. Peter Knox, Psy.D., M.Ed., the psychologist who actually examined Plaintiff, the ALJ concluded that despite Plaintiff's mental impairments she could perform certain jobs in the national economy if she had limited contact with the general public and persons in the workplace (Tr. 18-22). In other words, the ALJ determined Plaintiff's mental impairments interfered with her ability to act and react appropriately with the general public and persons in the workplace, including the concomitant stress therewith, so he included a restriction in Plaintiff's RFC to accommodate Plaintiff's mental impairments. The ALJ's decision clearly demonstrates he considered the State Agency expert opinions in evaluating Plaintiff's disability claims, which is precisely what the Regulations require. See 20 C.F.R. § 404.1527(e).

Notably, Plaintiff's argument is devoid of reference to Dr. Knox, who gave his opinion based upon a face to face interview with Plaintiff, as well as his review of the medical records from Clay Behavioral Health in 2002 (*see* Tr. 319-25). The ALJ, however, gave extensive consideration to the opinion Dr. Peter Knox formed after his meeting with Plaintiff on March 30, 2009 (*see* Tr. 19-21 (with the ALJ's multiple references to Exhibit 5F, the Clinical Evaluation and Mental Status report of Plaintiff by Dr. Knox)). Overall, Dr. Knox

concluded Plaintiff's thinking and concentration were normal, she was oriented to time, place, person, and purpose, and her remote and recent memory were normal (Tr. 322-23). Specifically regarding her mental functional ability, Dr. Knox found Plaintiff had no significant impairment in work related mental activities, had no significant issues with concentration and persistence other than her statement that her mind would race at times, had normal memory and understanding, and she had begun to use the energy from her "manic" phases to become irritable and argue and fight with others at work (Tr. 323-24). These findings clearly support the limitation on Plaintiff's interaction with the general public and others at work.

The undersigned finds no error with the ALJ's consideration and treatment of the medical opinion evidence in this record.

**Plaintiff's Residual Functional Capacity and the ALJ's Hypothetical Question**

Plaintiff asserts that the ALJ's failure to account for the finding that Plaintiff had moderate difficulties in sustaining concentration, persistence or pace in Plaintiff's RFC and in the question to the VE, resulted in a legally deficient determination of "not disabled" under the Social Security Act. Plaintiff's Brief at 6. The Court disagrees. A review of the ALJ's decision and the medical evidence of record reveals the ALJ's assessment of Plaintiff's RFC and the hypothetical questions to the VE account for all of Plaintiff's credible limitations. For clarity, the RFC and hypothetical questions will be discussed separately.

*Plaintiff's Residual Functional Capacity (RFC)*

Plaintiff argues the ALJ improperly evaluated Plaintiff's RFC. Specifically, Plaintiff asserts the ALJ failed to include his specific finding that Plaintiff has moderate difficulties in sustaining concentration, persistence or pace in his determination of Plaintiff's RFC,

which is reversible error. Plaintiff's Brief at 17.  Having reviewed the ALJ's decision, the argument of both parties and the administrative record, the Court finds Plaintiff's position lacks merit.  In addressing this issue, the Court must ascertain whether substantial evidence supports the determination of Plaintiff's RFC.

The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work.  20 C.F.R. § 404.1545.  The RFC is "the most [Plaintiff] can do despite [Plaintiff's] limitations.  *Id.*  The Eleventh Circuit has noted that the focus of an RFC assessment is on the doctors' evaluations of a claimant's condition and the resulting medical consequences.  *Lewis v. Callahan*, 125 F.3d at 1436, 1440 (11th Cir. 1997).  In evaluating a claimant's RFC, the ALJ is obliged to consider all of the claimant's impairments.  *Id.*  In this case, the ALJ ultimately found Plaintiff had the residual functional capacity to perform a range of light work with some restrictions (Tr. 14). Specifically, the ALJ found "the claimant has the [RFC] to perform light work . . . except she should avoid jobs requiring constant public interaction, but can have occasional contact with coworkers and supervisors" (Tr. 19).

As noted earlier, ALJ Maclean found Plaintiff had both severe physical and severe mental impairments.  To evaluate a claim of disability based on a mental impairment, the ALJ must follow a special procedure, often referred to as the Psychiatric Review Technique, that is set out at 20 C.F.R. § 404.1520a.  In accordance with those requirements, the ALJ found Plaintiff's severe mental impairments caused mild restrictions in Plaintiff's activities of daily living, moderate difficulties in social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation (Tr. 13).  *See* 20 C.F.R. § 404.1520a(c)(4).

The effects of an impairment are measured by the limitations on the ability to work. *See* 20 C.F.R. §§ 404.1520(c), 404.1521 (limitations from an impairment determine whether it is severe). Regarding Plaintiff's mental impairment, the ALJ found Plaintiff's mental health treatment notes, coupled with the findings made by a psychiatric consultative examiner, warranted an additional limitation to Plaintiff's RFC concerning working with the public (Tr. 22). The ALJ expressly stated he did not find Plaintiff's mental limitations necessitated any further reduction in Plaintiff's RFC, and cited to evidence in the record to support this finding. *Id.* The ALJ's specific reference to record evidence that supports the ALJ's finding of the types of work Plaintiff can do despite her physical and mental impairments is in accord with the prevailing case law in the Eleventh Circuit. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180-81 (11th Cir. 2011) (ALJ must specifically account for plaintiff's moderate limitations in concentration, persistence or pace, which may be found by reference to supporting medical evidence, or otherwise implicit or explicit statements in the hypothetical question asked of the vocational expert).

ALJ Maclean also pointed to moderate GAF[4] assessments of Plaintiff and observations made during the psychiatric consultative examination of Plaintiff as evidence

---

[4]The Global Assessment of Functioning Scale (GAF) was designed by mental health clinicians to rate the psychological, social and occupational functioning of an individual on a mental health scale of 0-100. A GAF score of 41-50 describes "serious symptoms" and includes "serious impairment in the social, occupational or school functioning." A GAF score of 51-60 describes "moderate symptoms" and includes only moderate difficulty in functioning. A GAF score of 61-70 indicates "some mild symptoms," but generally functioning "pretty well, has some meaningful interpersonal relationships." A GAF score of 71-80 indicates that if symptoms are present, they are transient and expectable reactions to psycho-social stressors with no more than slight impairment in social, occupational or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, DSM-IV, 32-34 (4th ed., American Psychiatric Assoc. 2000).

that she could perform work related functions with the only mental restriction limiting Plaintiff's contact with the general public, co-workers and supervisors. *Id.* The Court's independent review of the record finds substantial evidence supports Plaintiff can perform the range of work activities encompassed within the assessed residual functional capacity. At various points in time, Plaintiff was assessed with GAF scores ranging from a low of 50 on July 27, 2007 (Tr. 298) and November 25, 2008 (Tr. 301) to highs of 60 on February 6, 2008 (Tr. 307), July 15, 2007 (Tr. 305), and October 9, 2007 (Tr. 312). These GAF scores are indicative of moderate limitations and further support the ALJ's determination of Plaintiff's RFC.

In sum, the Court finds substantial evidence supports the mental limitations in Plaintiff's RFC that the ALJ determined Plaintiff would have despite her mental impairments. Moreover, substantial evidence exists to support the ALJ's finding not to impose additional mental limitations in the RFC.

*Use of Hypothetical Questions*

In this case, Plaintiff's claim of error with the hypothetical question asked of the vocational expert is intertwined with the Plaintiff's claim of error in the ALJ's assessment of her residual functional capacity. Having found the RFC states the most Plaintiff can do despite her impairments, the question before the Court is whether the hypothetical question upon which the VE based his opinion adequately encompassed all of Plaintiff's impairments. *See Pendley v. Heckler*, 767 F.2d 1561, 1562 (11th Cir. 1985).

It is well established in the Eleventh Circuit that when a vocational expert is utilized at the fifth step in the sequential evaluation process, the hypothetical question posed to the VE must include all impairments of the particular claimant/plaintiff for the VE's testimony

to constitute substantial evidence upon which the ALJ may rely in making the disability determination.  *Winschel*, 631 F.3d at 1180; *Pendley*, 767 F.2d at 1562.  However, the ALJ is not required to include any limitations offered by Plaintiff's counsel or Plaintiff's medical sources that were not supported by substantial evidence and/or were properly discounted. *See Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1161 (11th Cir. 2004)*; McSwain*, 814 F.2d at 617.  Further, "[a] 'hypothetical question[ ] adequately account[s] for a claimant's limitations . . . when the question[ ] otherwise implicitly account[s] for the [ ] limitations.'" *Kinnard v. Comm'r of Soc. Sec.*, 426 Fed. Appx. 835, 837 (11th Cir. 2011) (quoting *Winschel*, 631 F.3d at 1180) (alteration in original).  Moreover, "when medical evidence demonstrates that the plaintiff retains the ability to perform the tasks despite deficiencies, an ALJ's hypothetical restricting the plaintiff to simple and routine tasks adequately accounts for such limitations."   *Wilson v. Astrue*, No. 3:11-cv-153-J-TEM, 2012 WL 1060147, at *11 (M.D. Fla. Mar. 29, 2012) (citations omitted).

At the November 23, 2010 administrative hearing, vocational expert Don Harrison testified (Tr. 39, 45-46).[5]  The VE was present throughout the entire hearing; thus he heard Plaintiff's testimony prior to giving his testimony.  The ALJ asked the VE to classify Plaintiff's past relevant work and then to identify two positions a person with Plaintiff's age, education and past relevant work could do within the light work category with "probably no public interaction. . . [including] department store, retail, where there's constant public

---

[5]The AL referred to the VE as "Dr. Harrison" (Tr. 39, 45).  Plaintiff's counsel did not question or object to the title during the hearing.  Recognizing that his resume shows Harrison as a professor and the Director of Rehabilitation Counseling at the University of Michigan, the Court is unable to ascertain Dr. Harrison's educational credentials  (Tr. 90-91).

interaction, [also] including probably cashier . . . in a fast food restaurant. . ., [but] who could have occasional contact with co-workers or the supervisors" (Tr. 45). The VE identified an electrical accessories assembler and a light fixture inspector as representative jobs that such a person could perform. *Id.* Both positions are within the category of unskilled, light exertional work. *Id.*

Unskilled work is recognized by the Social Security Administration as " work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time," which generally encompasses no more than thirty (30) days. 20 C.F.R. § 220.133. The Eleventh Circuit addressed the category of unskilled work in *Winschel* and again, more recently, in *Washington v. Soc. Sec. Admin., Comm'r*, No. 12-13497, 2013 WL 150237 (11th Cir. Jan. 15, 2013). In both cases, the court recognized that unskilled work is analogous with work that involves simple, routine tasks. *Winschel*, 631 F.3d 1180-81; *Washington*, 2013 WL 150237 at *2. Very similar to the instant case, the *Washington* court accepted that the ALJ's finding limiting the plaintiff to jobs that involved only occasional contact with the general public and co-workers explicitly accounted for the plaintiff's moderate limitations in social functioning, and the ALJ's finding limiting plaintiff to simple, routine and repetitive tasks explicitly and implicitly accounted for the plaintiff's moderate limitations in concentration, persistence or pace. *Id.* In this instance, Plaintiff's past relevant work showed she was limited to unskilled jobs (*see* Tr. 39) and the ALJ set forth the additional restriction of no jobs requiring constant contact with the general public and only occasional contact with co-workers and supervisors in Plaintiff's RFC and the hypothetical question posed to the VE (*see* Tr. 19, 45). As a result, the VE identified two representative jobs that a person with Plaintiff's impairments and vocational background

could perform. The vocational expert's testimony thus constituted substantial evidence upon which the ALJ properly relied to find Plaintiff was not disabled under the Social Security Act from December 1, 2006 through the date of his decision (Tr. 16, 24).

### IV. Conclusion

For the foregoing reasons, the undersigned finds the decision of the ALJ that Plaintiff is not disabled within the meaning of the Social Security Act is supported by substantial evidence. Accordingly, the Commissioner's decision is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this Order and Opinion and, thereafter, to close the file. Each party shall bear its own costs.

**DONE AND ORDERED** at Jacksonville, Florida this 27th day of March, 2013.

*Thomas E. Morris*
THOMAS E. MORRIS
United States Magistrate Judge

Copies to all counsel of record